## WILLIAM HARTLEY, Respondent, v. CLAUDE B. CALBREATH, Appellant.

**Kansas City Court of Appeals, December 2, 1907 and January 6, 1908.**

1. **PHYSICIAN AND PATIENT: Malpractice: Witnesses: Privilege: Waiver.** In an action for malpractice the necessity of the matter makes the physician and the consulting physician competent witnesses for the defense. However, the mere bringing of an action for malpractice does not destroy the privilege of the patient to object to the testimony of a physician consulted independently of the defendant.

2. ———: ———: ———: ———: ———. And where the patient consults another physician with a view of qualifying such physician as a witness he waives the statutory privilege as to such physician.

3. ———: ———: ———: ———: ———: **Independent Consultation.** Where the patient independently consults another physician with the view of getting relief, such physician is an incompetent witness in an action against the former physician for malpractice. [4 Wigmore on Evidence, section 2389, and other authorities reviewed.]

4. ———: ———: ———: ———: **Statutory Construction.** The primary object of the statute is the relief of the patient and to that end it has made the way clear for him to permit a complete examination and give full and free communication of everything connected with his ailment which may be necessary to enable the physician to prescribe for him.

5. ———: ———: **Instructions.** The action of the court in giving and refusing instructions is reviewed and approved.

### On Motion for Rehearing.

6. ———: ———: **Witnesses: Privilege: Waiver: Independent Consultation.** The case of Smart v. Kansas City, 208 Mo. 162, 105 S. W. 709, interprets the case of Cramer v. Hunt, 154 Mo. 112, on the same line as the original opinion herein did, and a rehearing is denied.

Appeal from Mercer Circuit Court.—*Hon. George W. Wanamaker,* Judge.

AFFIRMED.

*Botsford, Deatherage & Young* and *Ira B. Hyde & Son* for appellant.

(1)   The court erred in rejecting the evidence of Dr. Powell.   The plaintiff, by bringing this suit, and especially by putting on the stand Drs. Skinner and Stacy, who had examined plaintiff the same as Dr. Powell had done, thereby waived his privilege to object to the testimony of Dr. Powell, or any other physician or surgeon who he might have thought would not make a good witness for him.   4 Wigmore on Evidence, sec. 2389; Cramer v. Hunt, 154 Mo. 112; Beckwell v. Hosier, 10 Ind. App. 5, 37 N. E. 580; Maget v. Maget, 85 Mo. App. 6; Henry v. Sneed, 99 Mo. 407; Moeckel v. Heim, 134 Mo. 576.   (2)   The first seven instructions given for plaintiff are inconsistent, contradictory, misleading, unsupported by the evidence; they submit false and immaterial issues to the jury and are erroneous.   Blashfield's Instructions to Juries, sec. 3373; Otto v. Bent, 48 Mo. 23; Henschen v. O'Bannon, 56 Mo. 289; Seymour v. Seymour, 67 Mo. 303; Stevenson v. Hancock, 72 Mo. 612; Price v. Railroad, 77 Mo. 508; Bluedorn v. Railroad, 108 Mo. 439; Stroot v. Hayward, 37 Mo. App. 585.   (3)   The court erred in refusing the seventh, eighth and ninth instructions asked by defendant.   (4)   Defendant was entitled to a directed verdict, for the reason, first, that defendant treated the case with care and skill; second, plaintiff's former injury and contributory negligence in concealing it caused the result complained of, and third, plaintiff's refusal to permit defendant and his associate to apply the remedy which they prescribed, placed the responsibility on him and not on them.   22 Am. & Eng. Ency of Law (2d ed.), 804, 805, 806, 807, 811; Pike v. Honsinger, 155 N. Y. 209; Wood v. Wyeth, 94 N. Y. Supp. 360; McKenzie v. Cannan, 92 N. Y. Sup. 1063; Barker v. Lane, 49 Atl. 963; Tefft v. Wilcox, 6 Kan. 59; Pettigrew v. Lewis, 46 Kan. 78; Gramm v. Boener, 56 Ind.

497; Woodward v. Hancock, 52 N. C. 384; Champion
v. Keith, 87 Pac. 845; Vanhooser v. Berghoff, 90 Mo.
487; Hibbard v. Thompson, 109 Mass. 286; Becker v.
Janinski, 15 N. Y. Supp. 675; Whitesell v. Hill, 66 N.
W. 894; Richards v. Willard, 35 Atl. 121, 176 Pa. St.
181; Haine v. Reese, 7 Phila. 138; McCandless v. Mc-
Wha, 22 Pa. St. 261; Potter v. Warner, 91 Pa. St. 362;
Geiselman v. Scott, 25 Ohio St. 86; Young v. Mason,
8 Ind. App. 271; Gramm v. Boner, 56 Ind. 497; Jones
v. Angell, 95 Ind. 380; Haerring v. Spicer, 92 Ill. App.
449; Littlejohn v. Arbogast, 95 Ill. App. 606.

*B. F. Kesterson, E. M. Harber* and *Orton & Orton*
for respondent.

(1) The court made no error in excluding the
evidence of Dr. Powell. R. S. 1899, sec. 4659; Mellor
v. Railroad, 105 Mo. 455; Holloway v. Kansas City,
184 Mo. 19; Arnold v. Maryville, 110 Mo. App. 254;
Ashby v. Botkins, 160 Ind. 170; 66 N. E. 462; Lane v.
Boicourt, 128 Ind. 420; 27 N. E. 1111; Elliott on Evi-
dence, sec. 636; Insurance Co. v. Miller, 100 Ind. 92;
50 Am. Rep. 769; Williams v. Johnson, 112 Ind. 278;
13 N. E. 872; Barker v. Steamship Co., 157 N. Y. 693;
51 N. E. 1089; Railroad v. Shepherd, 29 Ind. App. 65;
N. E. 765; Hope v. Railroad, 110 N. Y. 643; 17 N. E.
873. (2) The court made no error in granting instruc-
tions prayed by plaintiff. It clearly presents the issue
under the proof and the first and second count of the
petition. The plaintiff had a right to state his case
by the two counts so as to meet the evidence as it should
appear on the trial. Rinard v. Railroad, 164 Mo. 270;
Hess v. Granz, 90 Mo. App. 493. (3) The court made no
error in refusing the seventh, eighth and ninth instruc-
tions asked for by defendant. Meyers v. Railroad, 45
Mo. 137; Kendengers v. Railroad, 79 Mo. 207; Noyes,
Norman & Co. v. Cunningham, 51 Mo. App. 194; Weil

v. Schuartz, 21 Mo. App. 382; Barr v. Kansas City, 105 Mo. 557; Connolly v. Press Blg. Co., 166 Mo. 447; Dixon v. Atkinson, 86 Mo. App. 29; State v. Nelson, 166 Mo. 191; Klockenbrenk v. Railroad, 81 Mo. App. 351; Wolfe v. K. & L. of H., 160 Mo. 675.

ELLISON, J.—The defendant is a physician and in his professional capacity attended plaintiff whose shoulder was dislocated. This action is for damages for alleged malpractice. The trial resulted in plaintiff's favor.

It appears that plaintiff was thrown from a horse and dislocated his shoulder. Defendant was called and engaged to attend him. The evidence tended to show that he reduced or "set" the shoulder and pronounced it "all right." That he put plaintiff's arm in a bandage or "sling" suspended from around his neck, but he did not secure the arm to the body so as to prevent the upper portion from being free to move. He returned next day when plaintiff complained of severe pain. He then took off the bandage or, as otherwise expressed, took it out of the sling and left it free. Plaintiff continued to suffer great pain and his shoulder not appearing to be doing well, he was at defendant's office and there in presence of another physician the shoulder was examined, and not being thought to be in proper place another effort was made. Afterwards, yet another effort was made by the use of "pulleys." But after all, according to the evidence in plaintiff's behalf, the shoulder was not properly reduced or "put in place," whereby he has lost much of the use of that arm and has suffered great pain.

Plaintiff's theory is that defendant either failed in the first place to reduce the dislocation, or if he did reduce it, that he left it so improperly bandaged and cared for as that his arm had too much freedom of movement and the shoulder would not remain in place.

And that he was negligent and unskillful in not sooner discovering that the shoulder was not properly reduced and using immediate means to put it in proper condition.

The defendant offered Dr. Powell as a witness. On plaintiff's objection he was not permitted to testify, on the ground that whatever he knew about the case was privileged under the statute. [Sec. 4659, R. S. 1899.] It appears that several months after defendant's treatment of plaintiff, the latter called on the witness as a physician and was examined by him. There can be no doubt of the correctness of the court's ruling. It is true that in cases of this nature, the physician being a party, the necessity of the matter makes him competent to testify in his own behalf concerning communications between himself and his patient, notwithstanding the statute. [Cramer v. Hunt, 154 Mo. 112.] Otherwise the physician might be without means of protecting himself. And so a consulting physician has been held competent to testify concerning those things which transpired at the consultation. This was put upon the ground that the plaintiff himself had removed the privilege of secrecy. [Lane v. Boicourt, 128 Ind. 420.] Some of the language used in the opinion in that case, is perhaps broader than would be justified by the views entertained in this State; but restricted as we have stated, we believe it a proper statement of the law as held by our courts. In this case the defendant and consulting physician were permitted to testify without objection.

But the offer of Dr. Powell in defendant's behalf brings up altogether different considerations. He was in no way connected with defendant's attendance upon the plaintiff. He examined plaintiff in his professional capacity with a view to seeing what could be done for him. Defendant does not answer this position by saying that the secrecy of the whole matter had been re-

moved by the plaintiff bringing the present action and himself testifying and by his having made it necessary for the defendant to testify and therefore the privilege did not longer exist. For the secrecy and privilege of the communications to *Powell* had not been removed. It has been directly held by the Supreme Court that a waiver as to one physician is not a waiver as to others who may have attended upon the person making the waiver. The statute, says the court, "does not exclude the evidence by reason of its inherent character, but only when given by the persons within its purview." [Mellor v. Railroad, 105 Mo. 455; Barker v. Cunard Ship Co., 36 N. Y. Sup. 256, Affd. 157 N. Y. 693.]

We held in Arnold v. Maryville, 110 Mo. App. 254, that the statute in privileging all necessary information and communications received by the physician from the patient, did not apply to a physician who was called upon, not with a view of giving the patient attention and relief, but for the purpose of qualifying himself as a witness. But in this case the trial court and counsel first ascertained from Powell that nothing was said between him and plaintiff about a suit, or his being a witness, but that he was consulted with a view to "relieve him (plaintiff) of his distress."

Defendant, in support of his view that the bringing of the suit by plaintiff waived all privileges conferred by the statute, cites the following from 4 Wigmore on Evidence, section 2389 (the italics are the author's): "In the first place, the *bringing of an action* in which an essential part of the issue is the existence of physical ailment should be a waiver of the privilege for all communications concerning that ailment. The whole reason for the privilege is the patient's supposed unwillingness that the ailment should be disclosed to the world at large; hence the bringing of a suit in which the very declaration, and much more of proof, discloses the ailment to the world at large, is of itself

an indication that the supposed repugnancy to disclose does not exist. If the privilege means anything at all in its origin, it means this as a sequel. By any other conclusion the law practically permits the plaintiff to make a claim somewhat as follows: 'One month ago I was by the defendant's negligence severely injured in the spine and am consequently unable to walk; I tender witnesses A, B, and C, who will openly prove the severe nature of my injury. But, stay. Witness D, a physician, is now, I perceive, called by the opponent to prove that my injury is not so severe as I claim; I object to his testimony because it is extremely repugnant to me that my neighbors should learn of my injury, and I can keep it forever secret if the Court will forbid his testimony.' " It will be observed that the author seems to consider an exposure of the mere ailment by bringing the action is sufficient to entirely remove the bar of secrecy. But we regard his view as being much too restricted. The object of the statute is not fully met, in all cases by merely keeping secret the fact that a patient had a certain ailment. If the matter of public knowledge of the existence of the particular ailment is to be considered as measuring the extent of the privilege and the full breadth of the statute, there would be much less necessity for the law than has been supposed; since the mere cause of a physician's attendance on his patient is, perhaps, in the great majority of instances, known to the public, or, at least to as many of the public as would hear it in a court room.

The primary object of the statute is the *relief* of the patient, and to that end it has made the way clear for him to permit a complete examination and to give full and free communication of everything connected with his ailment which may be necessary to enable the physician to prescribe for him [Arnold v. Maryville, supra.] And those things are as securely included in

the purview of the statute as the ailment itself. And an exposure of the ailment does not necessarily release secrecy as to them. That the author's view, as quoted above, is too restricted may be illustrated: Suppose a physician on being called to attend a patient for an ailment about which, itself, there is no desire for secrecy, finds it necessary to examine his body and so informs him. He has upon his body a scar or other defect, wholly disconnected from the ailment on account of which the physician was called, which would be material evidence against him in the trial of some cause, civil or criminal, to which he was a party. If the physician is at liberty, or may be compelled, to testify to what he observed, or what was told him in relation thereto, the patient might refuse to be examined and thus deprive the physician of necessary information and thereby, possibly, lose his life. Again, it is well known that for the same ailment, different persons, on account of being or not being, or of having been or not having been, afflicted with other complaints must be treated in different ways, or with different medicines. In these instances and numberless others, the statute gives the patient free conduct and free tongue with his physician to the end that the latter may have full information for his relief and restoration. So it seems to be perfectly manifest that it is not alone the mere fact of a particular ailment which the statute intends that the physician shall not give in evidence, but its purpose is to protect all else which may have been communicated to him to enable him to intelligently prescribe.

But we are told by defendant that the Supreme Court in the case of Cramer v. Hurt, 154 Mo. 112, has decided that the bringing of the action was a waiver of the privilege of the statute; thereby, in effect overruling Mellor v. Railway Company, supra. We do not think so. There is a remark of the court at page 121

Hartley v. Calbreath.

of the report which gives some color to defendant's claim. But the point decided in the case was that a physician, when sued for malpractice, from *very necessity* should not be held to be included within the terms of the statute; otherwise, as before stated, he would be at the mercy of his patient. It was further held that in actions for damages brought by the husband for an abortion committed on his wife, public policy justified the admission of the wife's testimony as to matters connected with the attendance and acts of the physician. It being thought that knowledge that the statute did not apply to the wife in such case would operate to discourage such unnatural practice. After thus disposing of the case the court made the remark upon which defendant relies, as follows; that if an action is brought by a woman against her physician "for physical injury occasioned by his want of knowledge, or negligence in her treatment, then the privilege of secrecy on the part of the defendant would thereby he waived as to all matters connected with the case and his treatment thereof." But that was said of an action the very nature of which disclosed all that was desired to be kept secret, viz., an abortion on a woman. That case is not authority for the claim that the mere bringing of an action of itself destroys the privilege of the statute to anything more than those things which the action itself makes necessary to disclose. That no more than this was said or decided in that case is shown by the subsequent case of Holloway v. Kansas City, 184 Mo. 19, the opinion written by the same distinguished judge. In that case this general subject is elaborately discussed, and yet it is nowhere intimated that the mere bringing an action for injuries received from a fall on a sidewalk would waive the privileges of the statute as to testimony of the physician who treated the injuries.

There are some diseases, or other ailments, which

Hartley v. Calbreath.

are considered to be a disgrace to those afflicted; and others while not disgraceful, would be considered humiliating; and still others that would annoy a supersensitive person. If bringing the action exposes the secret to the public the privilege of the statute is waived as to the existence of the ailment and its treatment, and communications necessarily connected with it, and this is all that is decided in Cramer v. Hunt, supra. The plaintiff by bringing the action waives the statute no further than the action discloses, viz., the ailment and its treatment by the physician or physicians therein named. It does not waive the privilege as to other physicians. If the privilege is waived as to other physicians called, as was the witness under discussion, disconnectedly from the defendant, it must be by some act of the plaintiff in himself disclosing what took place with such physician by calling it out in evidence. We have already stated that in this case the defendant and the consulting physician with him, were permitted to testify. But when it came to defendant's offer of Dr. Powell, who afterwards examined plaintiff there was no waiver as to him and hence we approve the trial court's ruling excluding him.

We have examined the instructions given in the case as well as those refused for defendant. We regard them as applying correct principles of law to the facts which the evidence tended to prove. The demurrer to the evidence was properly rejected, since there was ample evidence, if believed by the jury, to support the case stated. The elaborate argument on that instruction in defendant's behalf, oral and written, is faulty by reason of its ignoring what was shown in plaintiff's behalf and proper inferences to be drawn therefrom. All of the instructions asked for defendant were given save three. They liberally covered every proper theory of defense. Number seven was well refused. It is so worded that it practically assumes

that defendant employed ordinary treatment for the shoulder. Number eight was faulty in that, in effect, it excuses the defendant for not using proper bandage if the shoulder was not reduced even though it may have been defendant's negligence which prevented its being reduced. As worded, it was well calculated to confuse and mislead. Number nine likewise had the fault of assuming matter in defendant's behalf. As written, it assumed, that defendant gave plaintiff recognized and ordinary treatment. It related to one theory of defense that the shoulder could not be reduced by the ordinary recognized treatment and that defendant then asked to make an incision which the plaintiff refused to permit. A full and proper instruction on this defense (No. 12) was given at defendant's request. We are satisfied that the instructions for plaintiff were so guarded and those for defendant so full and complete that no possible phase of the proper defense was kept from the jury. The result is an affirmance of the judgment. All concur.

ON MOTION FOR REHEARING.

ELLISON, J.—We are asked to grant a rehearing in this case or, in case that is refused, that we certify the cause to the Supreme Court on the ground that the foregoing opinion is in conflict with the case of Cramer v. Hunt, 154 Mo. 112, discussed by us. During the pendency of this motion the case of Smart v. Kansas City has been decided by the Supreme Court, in an opinion by Judge WOODSON, reported in 208 Sup. 162, 105 S. W. 709, in which it is shown that Cramer v. Hunt does not bear the construction for which defendant contends and from which it will be seen that the Supreme Court entertain views in regard to the citation from 4 Wigmore's Ev., sec. 2389, substantially like those to which we have given expression. Thus finding ourselves supported by the Supreme Court in regard to the principal contention of the defendant, we must overrule the motion for rehearing.